1
2
3
4
5

**LATHAM & WATKINS LLP**
   Michael G. Romey (Bar No. 137993)
      *michael.romey@lw.com*
   Sarah F. Mitchell (Bar No. 308467)
      *sarah.mitchell@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Telephone:  +1.213.485.1234
Facsimile:  +1.213.891.8763

6
7
8
9
10

   Richard P. Bress (*pro hac vice forthcoming*)
      *rick.bress@lw.com*
   Andrew D. Prins (*pro hac vice forthcoming*)
      *andrew.prins@lw.com*
   Eric J. Konopka (*pro hac vice forthcoming*)
      *eric.konopka@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201

11

*Attorneys for Plaintiffs and the Proposed Class*

12

## UNITED STATES DISTRICT COURT

13

## CENTRAL DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20

RIVAS SPORTS, INC., a California corporation, on behalf of itself and all others similarly situated; DAISY RIVAS, an individual; SIMON MANAGEMENT ASSOCIATES II, LLC, a Delaware limited liability company; and DEL AMO FASHION CENTER OPERATING COMPANY, L.L.C., a Delaware limited liability company,

                              Plaintiffs,

                    v.

21
22
23
24
25
26
27

COUNTY OF LOS ANGELES; COUNTY OF LOS ANGELES BOARD OF SUPERVISORS; DR. MUNTU DAVIS, individually and in his official capacity as County of Los Angeles Health Officer; DR. BARBARA FERRER, in her official capacity as Director, County of Los Angeles Department of Public Health; and ALEX VILLANUEVA, in his official capacity as Sheriff, County of Los Angeles,

                    Defendants.

28

CASE NO. 2:20-cv-08312

**CLASS ACTION COMPLAINT**

Plaintiffs Rivas Sports, Inc. ("Rivas Sports"), on behalf of itself and all others similarly situated; Daisy Rivas ("Ms. Rivas"); Simon Management Associates II, LLC ("Simon"); and Del Amo Fashion Center Operating Company, L.L.C. ("DAFC") (collectively, "Plaintiffs") allege as follows against Defendants County of Los Angeles (the "County"); County of Los Angeles Board of Supervisors (the "Board"); Dr. Muntu Davis, individually and in his official capacity as County of Los Angeles Health Officer ("Dr. Davis"); Dr. Barbara Ferrer, in her official capacity as Director, County of Los Angeles Department of Public Health; and Alex Villanueva, in his official capacity as Sheriff, County of Los Angeles (collectively, "Defendants"):

## **PRELIMINARY STATEMENT**

1.     The County of Los Angeles Health Officer issued an order forcing indoor malls and their interior retailers to remain closed while other retailers may open—even though there is no basis in science, public health policy, or good sense for this patently discriminatory treatment.   This blatantly unconstitutional act prevents interior mall stores from operating, crushing their businesses, denying their employees of their livelihoods, and laying waste to their businesses.   Plaintiffs—a retailer at the Del Amo Fashion Center in the County, Rivas Sports; its owner and employee, Ms. Rivas; and Del Amo's manager and owner—bring this action to end the unlawful and unconstitutional closing of indoor malls and shopping centers, an action taken under color of emergency powers but without any valid legal basis. Rivas Sports further brings this action on behalf of the hundreds of similarly situated retailers at Del Amo that have been forced to close and face the potential imminent collapse of their businesses without immediate relief.

2.     During the COVID-19 pandemic, Plaintiffs have responded quickly and decisively to protect the health of employees and customers.   For example, Rivas Sports and its owner, Ms. Rivas, took extensive precautions, above and beyond State and local requirements, to reduce the risk of COVID-19 transmission among

2                                    CLASS ACTION COMPLAINT

employees and customers at Rivas Sports' Pro Image Sports stores, while continuing to sell officially licensed sports merchandise at six locations in indoor malls throughout the County.

3.      Early on, the pandemic resulted in the ordered closure of businesses on an unprecedented scale, as federal, state, and local governments worked together to minimize the spread of the disease and maintain public safety.  In the past six months, much has been learned about how the disease spreads, and how that spread can be minimized or prevented.  On August 28, 2020, after extensive review of the relevant data and science, the California Department of Public Health issued a statewide order allowing counties throughout the State to reopen indoor malls and shopping centers subject to health and safety restrictions, including 25% maximum capacity, closed common areas, and closed food courts in California counties where COVID-19 is "widespread."[1]  The State's action was consistent with those of state and local governments nationwide.  And today, California's measured, evidence-based approach is already being implemented in nearly every county, including with the reopening of indoor malls and shopping centers in neighboring Orange and San Bernardino Counties just days after the August 28 order.

4.      To Plaintiffs' knowledge, only one county has refused to follow the State's science-based approach.  On September 2, 2020, Dr. Davis, the County of Los Angeles Health Officer, ordered that, in this County—alone among counties in this State—all indoor portions and operations of indoor malls and shopping centers must "remain closed to the public until further notice."[2]  This stands in stark contrast

---

[1] *See* Exhibit 1, California Department of Public Health, Statewide Public Health Officer Order (Aug. 28, 2020), *available at* https://www.cdph.ca.gov/Programs/ CID/DCDC/CDPH%20Document%20Library/COVID-19/8-28-20_Order-Plan-Reducing-COVID19-Adjusting-Permitted-Sectors-Signed.pdf.

[2] *See* County of Los Angeles Department of Public Health, Order of the Health Officer, Reopening Safer at Work and in the Community for Control of COVID-19 (revised Sept. 2, 2020), *available at* http://publichealth.lacounty.gov/media/ coronavirus/docs/HOO/2020_09_02_HOO_Safer_at_Home.pdf.  The most recent County Order of the Health Officer was issued on September 4 with minor changes, and no changes to the County's restrictions on indoor malls and shopping

CLASS ACTION COMPLAINT

to the County's treatment of virtually every other retail establishment, including large and small scale retailers and even salons and barbershops—all of which were permitted to reopen immediately and operate at a minimum at 25% capacity (in accordance with statewide guidelines).

5. There is absolutely no data to support the differential treatment between indoor malls and the other large retail stores that have been open for months, nor any data to support differentiation of "outdoor" malls (which are allowed to open), and neither the County nor any other Defendant has offered a data-based explanation— or any reason whatsoever—for this differential treatment. The September 2, 2020 order is out of line with statewide standards, as well as standards established by state and local governments nationwide.

6. That order has resulted in the needless closure of hundreds of businesses and thrown thousands of employees out of work, devastating those businesses, their employees, and their families. Rivas Sports has been forced to close six of its eight Pro Image Sports locations, just because they are located in the interior of County malls. At the same time, Rivas Sports' other two locations— which are inside malls in nearby San Bernardino County—have safely reopened. Because Rivas Sports has had to close 75% of its stores, and depends on foot traffic within County malls to generate business, its sales and profits have plunged. It has been forced to lay off employees, including dedicated, long-term managers that Ms. Rivas has worked with for 15 years; and it can no longer afford to pay Ms. Rivas a salary—money Ms. Rivas needs to support herself and her three children. Over two decades, Ms. Rivas and her late husband built and expanded Rivas Sports into a thriving small business, and Ms. Rivas has devoted everything to managing the business on her own for the past five years. But the forced closure of these stores

centers. *See* Exhibit 2, County of Los Angeles Department of Public Health, Order of the Health Officer, Reopening Safer at Work and in the Community for Control of COVID-19 (revised Sept. 4, 2020), *available at* http://publichealth.lacounty.gov/media/Coronavirus /docs/HOO/ 2020_09_04_HOO_Safer_at_Home.pdf.

threatens the business's viability, and could force it to permanently shut down if the County does not immediately lift the closure order.

7.     Because of the September 2, 2020 order, hundreds of other businesses at Del Amo and other indoor malls and shopping centers in the County also remain closed to the public, depriving them of badly needed revenue and thousands of employees of gainful employment—all without any justification whatsoever or means to challenge the government's overreaching and arbitrary action.

8.     The County's order has arbitrarily deprived Plaintiffs of their core property interests and other legal rights without due process and in violation of their right to equal protection under the law.  It must be struck down to prevent the substantial continuing harm being inflicted on Plaintiffs, hundreds of other businesses, and thousands of employees at indoor malls and shopping centers throughout the County.

## THE PARTIES

9.     Plaintiff Rivas Sports, Inc. is a California corporation.  It operates eight Pro Image Sports franchises, which sell officially licensed sports apparel, such as hats and jerseys.  Rivas Sports operates one location in the Del Amo Fashion Center ("Del Amo") in Torrance, California, in the County of Los Angeles, and holds a business license from the City of Torrance for that location.  Rivas Sports also operates five other locations at indoor malls in the County of Los Angeles, and two locations at indoor malls in the County of San Bernardino.  Currently, all six of Rivas Sports' County of Los Angeles locations are closed due to Defendants' actions.

10.     Daisy Rivas is a resident of the County of Los Angeles.  Ms. Rivas is an employee of, and the sole shareholder of, Rivas Sports.

11.     Plaintiff Simon Management Associates II, LLC is a Delaware limited liability company with its principal place of business in Indianapolis, Indiana. Simon is a manager of commercial retail real estate throughout the United States.  It manages five commercial retail properties throughout California.  Simon is the

exclusive manager of Del Amo pursuant to a contract with DAFC.  As property manager, Simon is contractually responsible for operating Del Amo, including building maintenance and leasing, and employs the management employees for the facility.  Simon is owned by Simon Property Group, L.P. ("Simon Property").

12.    Plaintiff Del Amo Fashion Center Operating Company, L.L.C. is a Delaware limited liability company with its principal place of business in Indianapolis, Indiana.  DAFC owns the Del Amo Fashion Center in Torrance, California.

13.    Defendant County of Los Angeles is a charter county organized and existing as a legal subdivision under the laws of the State of California.

14.    Defendant County of Los Angeles Board of Supervisors is a five-member governing body, elected pursuant to the County of Los Angeles Charter.

15.    On information and belief, Defendant Dr. Muntu Davis is a resident of the County of Los Angeles.  He is a party to this action in his individual capacity and in his official capacity as County of Los Angeles Health Officer.

16.    Defendant Dr. Barbara Ferrer is a party to this action in her official capacity as Director of the County of Los Angeles Department of Public Health.

17.    Defendant Alex Villanueva is a party to this action in his official capacity as Sheriff of the County of Los Angeles.

## JURISDICTION AND VENUE

18.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under 42 U.S.C. § 1983 and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

19.    Jurisdiction is also appropriate in this Court pursuant to 28 U.S.C. § 1343(a)(3) "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured

by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

20.   This Court has supplemental jurisdiction over Plaintiffs' claims asserted under the Constitution of the State of California pursuant to 28 U.S.C. § 1367(a), because Plaintiffs' state constitutional claims arise from the same nucleus of operative facts as its federal claims and thus form part of the same case or controversy under Article III of the United States Constitution.

21.   The Central District of California is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because it is a District in which Defendants reside, maintain offices, exercise their authority in their official capacities, and have enforced the order at issue in this case.

## GENERAL ALLEGATIONS

### Plaintiffs Have Safely Operated Retail Stores Inside

### Shopping Malls During The COVID-19 Pandemic

22.   COVID-19[3] was declared a pandemic by the World Health Organization on March 11, 2020, and on March 13, President Trump declared a national emergency.  In the days immediately following, state and local officials across the country began issuing "stay-at-home," "shelter-in-place," and similar orders requiring individuals like Ms. Rivas to literally remain in their homes with limited exceptions.  During this period of great uncertainty about COVID-19 and how it spreads, many of these orders required all non-essential businesses to temporarily close in-store activities, and some initially required the complete closure of common areas of malls and shopping centers.  These closures included Rivas

---

[3] COVID-19 is a disease caused by the SARS-CoV-2 virus.  The World Health Organization recognizes that the disease name, rather than the virus name, is used "to enable discussion on disease prevention, spread, transmissibility, severity and treatment."  World Health Organization, *Why Do the Virus and the Disease Have Different Names?*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it (last visited Sept. 10, 2020).  Consistent with that purpose, this complaint will refer to COVID-19 rather than the virus that causes it.

Sports' eight Pro Image Sports locations, along with malls and shopping centers like Del Amo throughout the United States.

23.     As state and local governments learned more about COVID-19, how it spreads, and how the likelihood of spread can be minimized, they gradually scaled back restrictions on individuals and commercial activities, including retail operations.  These governmental actions were typically combined with sensible, achievable, and effective measures meant to inhibit the person-to-person spread of COVID-19, such as disinfectant protocols, occupancy limitations, social distancing, and the mandatory wearing of face masks.[4]

24.     Rivas Sports' six County locations of Pro Image Sports were open from late May to mid-July, when all mall operations were permitted to open in the County. During this time, Rivas Sports took extensive precautions to safeguard the health of its employees and customers.  Among other things, it trained employees on all applicable County protocols, posted those protocols in the store, closed the dressing rooms, posted signs regarding social distancing and directing customers to not handle the merchandise, provided employees and customers with face masks, installed sneeze-guards and hand sanitizer stations in the store, required employees to wash their hands every 30 minutes, implemented extensive cleaning protocols, assigned employees to stations to minimize the cross-use of equipment, and required managers to screen employees at the start of each shift.  Rivas Sports' stores in the County operated at 50% maximum capacity at all times, in accordance with County requirements.

25.     State and local governments overwhelmingly have recognized that, with appropriate limitations and measures, most retail business, including those inside indoor malls and shopping centers, can be operated safely.  Indeed, Rivas

---

[4] *See, e.g.*, Governor of Texas, Executive Order GA 18, at 3 (Apr. 27, 2020), *available at* https://gov.texas.gov/uploads/files/press/EO-GA-18_expanded_reopening_of_services_COVID-19.pdf.

Sports safely operates two retail locations at indoor malls in San Bernardino County, following state and local modifications on operations and its own stringent protocols, and with the utmost attention to the health and safety of its employees and customers.

**Del Amo Is Safe, But Nonetheless Its Interior Retailers**
**Have Been Forced To Close Indoor Operations**

26.    With over 250 retailers and 2.5 million square feet, Del Amo is one of the largest shopping malls in the United States.  Del Amo and its retailers—including Rivas Sports—normally employ over 5,000 individuals, and the mall ordinarily generates over $50 million in sales taxes and pays over $10 million in real estate taxes benefiting the community each year.

27.    From 2013 to 2016, Del Amo underwent extensive renovations costing almost half a billion dollars.   State-of-the-art heating, ventilation, and air conditioning ("HVAC") systems were installed during these 2013-2016 renovations.

28.    Del Amo has vast and voluminous multistory pavilions that provide ample room for every patron to maintain social distancing and greatly reduce the risks of COVID-19 exposure.  Hallways in the mall are 30 to 45 feet wide in most areas, and 60 to 80 feet wide in the major intersections.  Ceiling heights are 50 to 70 feet in two-level areas, and 15 to 40 feet in one-level areas.

29.    On March 19, 2020, due to the COVID-19 pandemic, the County initially ordered the closure of all indoor malls and shopping centers, with the exception of "Essential Businesses" with entrances accessible to the public from the exterior of the indoor mall or shopping center.  On May 26, the County issued an Order allowing indoor operations of malls and shopping centers to reopen.  Del Amo's interior reopened on May 29 with appropriate and effective safety precautions going above and beyond State and local requirements.

30.    To ensure the safety of its retailers, their customers, and its own personnel, Simon has adopted extensive COVID-19 Exposure Mitigation Protocols in consultation with world-renowned epidemiologist and public health researcher

Dr. Jiali Han, and Certified Industrial Hygienist Daniel Engling.  The protocols identify potential points of exposure in malls based on the latest research regarding transmission; adopt detailed measures to protect employees and customers from exposure; formulate communications and signage strategies within malls, including detailed plans regarding messaging and signage to regulate the flow of customers and encourage social distancing and personal hygiene; implement plans regarding use of common areas and closures of common area amenities, including modifications to the use of bathrooms and elevators; and thorough property cleaning and sanitation measures.

31.    In accordance with these protocols, Del Amo implemented extensive measures to reduce the risk of COVID-19 transmission and to protect employees, retailers, and customers.  Three mall entrances were used for customers, propped open at all times the mall was open to enhance air circulation.  People-counting cameras at each entrance and other techniques were used to track occupancy in real time, security officers were stationed at each entrance to ensure the mall's compliance with capacity limits, and state of the art air filters were installed. Informative signage was strategically placed throughout the mall to direct the flow of customers, encourage social distancing and personal hygiene, and communicate that face masks were required at all times.  All common area moveable seating was removed, and built-in seating was closed to the public.  The common areas were cleaned extensively during operating hours and overnight, including sanitizing key touch points such as directories, restrooms, elevators, and escalators.  Hand sanitizer stations were installed at entries and throughout indoor common areas.  The food court, play area, guest services desk, nursing station, some restrooms, and every other urinal and sink in open restrooms were also closed.

32.    On July 13, in response to a statewide upsurge in cases, the California Department of Public Health issued a Statewide Public Health Officer Order closing all indoor malls in the County, although retailers with exterior entrances and

1    essential businesses were permitted to remain open.  The County then issued a public

2    health order on July 14, mirroring the new statewide restrictions.

3          33.     Rivas Sports and the vast majority of Del Amo's retailers are "interior

4    retailers," meaning they have no separate entrance accessible to the public from the

5    exterior of the mall; *i.e.*, customers must enter the indoor common area of the mall

6    to access these retailers.  Only 55 Del Amo retailers are "exterior retailers," currently

7    permitted to open for indoor operations at 25% capacity (with the exception of

8    restaurants with exterior entrances, which are open only for outdoor dining and

9    takeout).  And only approximately four of Del Amo's retailers operate non-food

10   service essential businesses, such that they may invite consumers into their spaces

11   by appointment to provide essential services, including optometry appointments.

12   The remainder—approximately 200 interior retailers—have, like Rivas Sports, been

13   permitted to offer sales only through curbside pickup or delivery since July 13.

14                **California Permits Indoor Malls To Open At Reduced Capacity**

15         34.     On August 28, 2020, the California Department of Public Health issued

16   a Statewide Public Health Officer Order establishing a system that places each

17   California county into a Tier based on health data, including case rates per capita

18   and percentage of positive COVID-19 tests.  *See* Exhibit 1 ("Statewide Order").  The

19   County is currently in "Tier 1," and Tiers are updated weekly as data is tracked.

20   Beginning August 31, Tier 1 counties were permitted to reopen indoor malls and

21   shopping centers, including their interior retailers, with maximum 25% capacity,

22   closed common areas, and closed food courts.  Tier 1 counties were also permitted

23   to open all other indoor retail stores with maximum 25% capacity.

24         35.     California's treatment of indoor malls and their retailers is consistent

25   with how these businesses are being treated throughout the United States.  To

26   Plaintiffs' knowledge, none of the 50 States and no other California county besides

27   the County of Los Angeles requires indoor operations of malls and their retailers to

28   remain closed.

**The County Health Officer's Order Opens All Retail Stores For Business, Except Those Located In Indoor Malls**

36.     The Statewide Order provides: "A local health jurisdiction may continue to implement or maintain more restrictive public health measures," but only "***if the jurisdiction's Local Health Officer determines that health conditions in that jurisdiction warrant such measures***." Statewide Order ¶ 4 (emphasis added). To Plaintiffs' knowledge, all California counties except the County of Los Angeles have aligned with the provisions of the Statewide Order, and have allowed indoor malls and shopping centers to reopen. For example, on September 1 and 4, 2020, respectively, Rivas Sports opened each of its two locations at indoor malls in San Bernardino County at 25% maximum capacity. And starting on August 31, Simon reopened indoor operations at malls in San Bernardino, Alameda, and Santa Clara Counties, in accordance with State and local restrictions. San Bernardino and Alameda Counties are in Tier 1, and Santa Clara County was moved to Tier 2 on September 8 (previously, it was in Tier 1).

37.     On September 2, 2020, Dr. Davis, the Health Officer for the County of Los Angeles, issued an order titled "Reopening Safer at Work and in the Community for Control of COVID-19." *See* Exhibit 2 ("County Order").[5] Paragraph 9 of the County Order describes a category of "Lower-Risk Businesses." "Lower-Risk Businesses are businesses that are not specified in Paragraph 7 of this Order"—such as indoor dining, bars, and entertainment venues, which must remain closed—"and not defined as Essential Businesses in Paragraph 18 of this Order"—such as banks, hardware stores, and grocery stores.

---

[5] The County Order was last revised on September 4, 2020, with no revisions to the provisions discussed in this Complaint. *Compare* Exhibit 2 *with* County of Los Angeles Department of Public Health, Order of the Health Officer, Reopening Safer at Work and in the Community for Control of COVID-19 (revised Sept. 2, 2020), *available at* http://publichealth.lacounty.gov/media/ coronavirus/docs/HOO/2020_09_02_HOO_Safer_at_Home.pdf.

38.     The County Order defines indoor malls and shopping centers as Lower-Risk Businesses, recognizing the inherently safe nature of those facilities.  County Order ¶ 7(d).  Rivas Sports and other interior retailers in indoor malls, such as retail stores selling clothes, shoes, toys, jewelry, books, and sunglasses, also are defined as Lower-Risk Businesses.  And, in general, Lower-Risk Businesses, including large department stores and small retailers—indeed, even hair salons and barbershops—are now able to open to the public with capacity limitations.  *See* County Order ¶ 7(a), (e).

39.     The County Order thus claims that it "aligns the County with" the Statewide Order, "which describes a tiered approach to relaxing and tightening restrictions on activities based upon specified criteria[.]"  County Order ¶ 1.  And that is true in many respects.  But when it comes to indoor malls and their interior retailers, the County Order differs sharply from the Statewide Order.  Even though the County Order recognizes that these indoor malls and retail businesses are Lower-Risk Businesses, the County has ordered them to remain closed.  Paragraph 9(d) provides:

> ***For Indoor Malls and Shopping Centers***, defined as:  A building with (7) or more sales or retail establishments with adjoining indoor space, ***all indoor portions and operations remain closed to the public until further notice***.  Businesses located entirely within the interior of an Indoor Mall or Shopping Center that are not temporarily closed pursuant to Paragraph 7 of this Order, may offer goods and services via outdoor curb-side pickup.  Businesses or activities that are part of an Indoor Mall or Shopping Center and that are not closed pursuant to Paragraph 7 of this Order, but that are accessible to the public from the exterior of the Indoor Mall or Shopping Center may remain open to the public.

(Emphasis added.)

40.     As a result of Paragraph 9(d), Del Amo's interior retailers that are Lower-Risk Businesses, including Rivas Sports, are unable to open to the public, and employees of these retailers, such as Ms. Rivas, are unable to return to work.

But they would be able to open to the public and resume work if the retailers had an exterior entrance or were not otherwise located within an indoor mall.

41.     Appendix E to the County Order details "Protocols for Shopping Center Operators."  *See* Exhibit 3 ("Appendix E").  Appendix E allows businesses located entirely within the interior of a mall or shopping center only to offer "online ordering and curbside pick-up outside the shopping center" in accordance with the following guidance:

> Retailers that choose to offer curbside pick-up should set pick-up times for items so that employees are able to bring pre-ordered items [to] customers at a designated site or sites outside the mall.  Pick-up sites should be clearly marked and customers should be encouraged to pre-pay for their orders.  On arrival, customers should notify the employees that they have arrived for pick-up and should remain in their car.  An employee, wearing a cloth face covering should bring the customer's order to the designated pick-up site in a container (e.g., a bin, shopping cart, or other container) and place it directly in the customer's trunk.

42.     Rivas Sports has implemented online ordering with an option for curbside pickup, but no customers have elected to use curbside pickup, despite Rivas Sports' attempts to market the option through social media posts and podcasts.  This is because the Pro Image Sports business—featuring licensed sports merchandise that customers often buy on "impulse"—depends on foot traffic within the mall, as do many other interior retailers.  The County Order's allowance of strictly regulated outdoor pickup has not provided meaningful relief to Rivas Sports, Ms. Rivas, the hundreds of retailers County-wide that have been forced to close, and the thousands of employees County-wide who have lost work.  Only about 40 of Del Amo's approximately 200 interior retailers currently offer curbside pickup.

43.     Appendix E also details how "Essential Businesses" located in a mall or shopping center's interior may operate:

> Essential services that operate inside a shopping center such as medical services (clinics or optometrists) may continue to operate.  If these

businesses do not have a door that opens to the exterior of the center, these businesses should work by an appointment-only system. Staff should meet each patient/client at the mall entrance and escort them to the service location. As much as feasible other methods such as telemedicine options or on-line services should be offered.

44. Very few interior retailers at Del Amo offer "essential services," and those that do must operate by appointment only, with employees escorting customers into and out of the mall. Currently Amy Kim Optometry and LensCrafters (offering optometrist appointments) and Skin Laundry (officer clinical skincare treatments) are open by appointment. A United States Military recruiting office and United States Post Office boxes are also operating in the interior.

45. In sum, the County Order requires closure of all indoor operations of malls and their interior retailers, except to the extremely limited extent that interior retailers may offer curbside pickup entirely outside of the mall, and interior Essential Businesses may offer essential services by appointment only. The County Order stands in direct contradiction to the Statewide Order.

## Defendants Have Offered No Valid Reason For Their Departure From Statewide Policy

46. While indoor malls and their interior retailers are now open and operating safely *elsewhere* in California and the United States, and large and small retail stores *not* located in indoor shopping centers or malls are now open and operating safely in the County, *indoor shopping centers and their interior retailers in the County, like Rivas Sports, uniquely remain closed, and many of their employees, like Ms. Rivas, remain out of work*—without any explanation or any scientific support. Although the Statewide Order allows local health jurisdictions to implement more restrictive public health measures "if the jurisdiction's Local Health Officer determines that health conditions in that jurisdiction warrant such measures" (Statewide Order ¶ 4), Dr. Davis has not identified any "health conditions" in the County that warrant the County's refusal to align with the Statewide Order and

nationwide practice with respect to indoor malls and shopping centers.  Nor has any other Defendant.

47.    On September 4, 2020, Ms. Rivas sent an email to the Board, mentioning Rivas Sports' Del Amo location and urging reconsideration of the County's departure from the statewide policy adopted in every other county.  *See* Exhibit 4.  She submitted three other similar emails to the Board regarding Rivas Sports' other County retail locations.  She only received an automated response that the email "will be included as part of the official record for the Board meeting," but has never received any explanation from the County regarding its arbitrary, discriminatory, and deeply harmful policy.

48.    The State's data does not support treating Los Angeles County differently from other Tier 1 counties.  For example, the State currently classifies Los Angeles and Imperial Counties as Tier 1, *i.e.*, counties where COVID-19 is deemed "widespread."  The key factors that the State uses for tiering are uniformly worse in Imperial County:  Its most recent adjusted case rate for tiering purposes was 11.8 new COVID-19 positive cases per day per 100,000 people (vs. 9.6 for Los Angeles County) and a 10.9% positivity rate (vs. 4.3% for Los Angeles County).[6]  But, inexplicably, indoor malls and shopping centers in Imperial County are allowed to be open, while those in Los Angeles County must remain closed.[7]

49.    The County Order provides no explanation whatsoever for its industry-specific departures from State mandates.  *See* County Order ¶¶ 10-14.  And there is no valid public health reason for treating indoor malls and their interior retailers differently.  The only even arguable distinction between interior retailers like Rivas Sports and other retailers with exterior entrances is the need to pass through notably

---

[6] *See* California Blueprint for a Safer Economy, https://covid19.ca.gov/safer-economy (last visited Sept. 10, 2020).

[7] *See* County of Imperial, Order of the Health Officer at 6 (Aug. 30, 2020), *available at* http://www.icphd.org/media/managed/healthofficerorders/Health_Officer_Order_8_30_2020_v2_002_002_.pdf.

wide, high-ceilinged, and well ventilated interior corridors for access—as opposed to narrow outdoor sidewalks where social distancing, mask usage, and other protocols may not be enforceable—and that distinction does not support treating indoor malls and their interior retailers more restrictively.

50.     The data does not support any hypothesis that those wide and high-ceilinged interior corridors pose any greater risk of transmitting COVID-19. Plaintiffs are unaware of any support—and the County Order identifies none—for the notion that settings such as spacious indoor malls and shopping centers with modern and well-maintained HVAC systems, and their interior retailers, present greater risks when compared to the large and small retailers, including hair salons and barbershops, that the County has permitted to remain open.

51.     The World Health Organization has advised that a "well-maintained and operated [HVAC] system can reduce the spread of COVID-19 in indoor spaces by increasing the rate of air change, reducing recirculation of air and increasing the use of outdoor air."[8]  The Global Heat Health Information Network, an independent network of scientists and policymakers, completed a review of the available evidence and concluded:  "Air conditioning and ventilation are considered effective control strategies for preventing workplace infection and ill health," and "there is no strong evidence to suggest that a well-maintained air conditioning, ventilation, or other type of climate control system will contribute to the transmission of COVID-19."[9]

52.     Indeed, two recent studies reported that the virus was not detected at all in air samples in the immediate vicinity of COVID-19 patients in hospitals, despite

[8] *Q&A: Ventilation and Air Conditioning and COVID-19*, WORLD HEALTH ORGANIZATION (July 29, 2020), https://www.who.int/news-room/q-a-detail/q-a-ventilation-and-air-conditioning-and-covid-19 (last visited Sept. 10, 2020).

[9] *Q&A: Do Air Conditioning and Ventilation Systems Increase the Risk of Virus Transmission?  If So, How Can This Be Managed?*, GLOBAL HEAT HEALTH INFORMATION NETWORK (May 22, 2020), http://www.ghhin.org/heat-and-covid-19/ac-and-ventilation (last visited Sept. 10, 2020).

significant viral load in the patients' respiratory secretions.[10]   Another recent study found that on a January 2020 flight from China to Canada, two patients with COVID-19 (one of whom was actively symptomatic) did not transmit the virus to any of the 25 passengers seated nearby.[11]   And there have been no reports of COVID-19 transmission due to air recirculation at indoor malls, shopping centers, or retail stores.

### The County Order Arbitrarily Treats Similarly Situated Businesses Differently

53.   At the same time that the County has chosen to depart from the Statewide Order and nationwide practice by closing indoor malls and their interior retailers, the County has allowed comparable businesses to remain open for months, including large retail stores (such as big-box stores and multilevel department stores with elevators and escalators) and "outdoor" malls.

54.   The County Order allows large stores including Walmart, Target, Cost Plus World Market, and Daiso to operate within half a mile of Del Amo.  Although each of those stores sells essential items, they also on that account are allowed to open all of their departments for in-store shopping and thus sell any other products in their inventory including an enormous variety of non-essential items.  However,

---

[10] Vincent C. C. Cheng, *et al.*, *Escalating Infection Control Response to the Rapidly Evolving Epidemiology of the Coronavirus Disease 2019 (COVID-19) Due to SARS-CoV-2 in Hong Kong*, 41 INFECTION CONTROL AND HOSPITAL EPIDEMIOLOGY 493, 497 (2020), *available at* https://www.cambridge.org/core/journals/infection-control-and-hospital-epidemiology/article/escalating-infection-control-response-to-the-rapidly-evolving-epidemiology-of-the-coronavirus-disease-2019-covid19-due-to-sarscov2-in-hong-kong/52513ACC56587859F9C601DC747EB6EC; Sean Wei Xiang Ong, *et al.*, *Air, Surface Environmental, and Personal Protective Equipment Contamination by Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) from a Symptomatic Patient*, 323 JAMA 1610 (2020), *available at* https://jamanetwork.com/journals/jama/article-abstract/2762692.

[11] Kevin L. Schwartz, *et al.*, *Lack of COVID-19 Transmission on an International Flight*, 192 CANADIAN MEDICAL ASSOCIATION JOURNAL E410 (2020), *available at* https://www.cmaj.ca/content/192/15/E410.

stores that sell comparable items in the Del Amo interior are unable to do so under the County Order, and employees of those stores are unable resume their work.

55.     For example, Walmart and Target may sell licensed sports merchandise and other apparel right next to Del Amo, but Rivas Sports cannot resume indoor operations under the County Order simply because it is located in Del Amo's interior.  Oil & Vinegar, a specialty store featuring oils, vinegars, and pre-packaged foods and gifts from around the world, has been forced to close while Cost Plus World Market continues to sell specialty food items and gifts down the street.  And customers may purchase toys, stationery, and other items from Japan right outside of Del Amo at Daiso, but Sanrio and Tokyo Japanese Lifestyle are prohibited from welcoming customers in Del Amo's interior to purchase the same types of items. But there is no reason to believe that, by virtue of their placement, stores within indoor malls and shopping centers (which almost uniformly have wide, high-ceilinged, and well-ventilated interior walkways) as a class are riskier than stores located elsewhere.  There is no rational basis for this differential treatment of Rivas Sports, Oil & Vinegar, Sanrio, Tokyo Japanese Lifestyle, and hundreds of other interior retailers—and neither the County nor any other Defendant has offered one.

56.     The County's arbitrary treatment of interior retailers is evident across the Del Amo property as well.  Large, multilevel stores including Nordstrom and Barnes & Noble have been permitted to operate at Del Amo since late May, merely because they have exterior entrances.  However, stores selling apparel and books in Del Amo's interior, such as American Eagle and BookOff, are forced to close.  But there is no reason to believe that, by virtue of their placement, stores within indoor malls and shopping centers (which almost uniformly have wide, high-ceilinged, and well-ventilated internal walkways) as a class are riskier than shopping center stores with exterior entrances.  There accordingly is no rational basis for this differential treatment among the mall's retailers—and neither the County nor any other Defendant has offered one.

57.     The arbitrariness of these classifications is particularly evident in the distinction made between department stores (in which varying types of goods are sold within different sections, and under the same roof, of the same commonly owned store) and indoor malls (in which varying types of goods are sold within separately owned stores within the same mall).  There is no rational reason to conclude that the separate ownership of the stores within a mall pose a greater risk than the commonly owned but distinct sections of a department store.

58.     The County Order's irrationality when it comes to distinctions among retail stores is also pronounced because it permits small retailers with narrow aisles and low ceilings to remain open if they have an exterior entrance, but forbids all retailers—no matter how large and well ventilated—to remain closed if they are located in the interior of a mall or shopping center.

59.     The irrationality of the County Order is further demonstrated by the fact that the County elected to follow the Statewide Order and generally allow hair salons and barbershops to resume operations at 25% maximum capacity, in accordance with Tier 1 restrictions, beginning on September 2, 2020.  County Order ¶ 9(e).  Yet not only can Brow Arc Salon, located in Del Amo's interior and offering haircuts and coloring, not resume operations, but neither can interior retailers such as Dr. Eye Phone and Fast Fix, which repair phones and jewelry, respectively, services that require no person-to-person contact and thus present less risk.  It is inexplicable that the County Order would choose to defy State guidance with respect to indoor malls—which easily allow for social distancing when at reduced capacity—but to follow the State's directive when it comes to services that, by their nature, require *direct and sustained* physical contact between employees and customers.

60.     As a result of these irrational policies, consumers seeking products and services are now limited to shopping in a smaller number of governmentally favored stores, resulting in a greater concentration of consumers in a smaller number of retail

locations, rather than a disbursement of those people across large spaces where social distancing would actually be more achievable.

### Virtually All Other Jurisdictions Have Rejected Defendants' Arbitrary Interior/Exterior Mall Dichotomy

61.     The County Order's decision to close indoor malls and their interior retailers while allowing retail stores with exterior entrances to remain open stands in stark contrast to the approaches taken not only by California, but also by state and local governments throughout the country.  Although some states and localities initially distinguished between interior and exterior mall and shopping center retailers, they have virtually unanimously eliminated such distinctions as policymakers became aware of the actual science and data.  And some states, such as Florida and Texas, never recognized the arbitrary interior/exterior distinction at all.

62.     For example, Rivas Sports' Pro Image Sports locations in San Bernardino County are currently open in accordance with the Statewide Order. These locations are in Ontario and Montclair, only 50 to 60 miles from Del Amo. And Del Amo interior retailer Oil & Vinegar's *eleven* other retail locations are currently open in Nevada, Oregon, Washington, Texas, South Carolina, Pennsylvania, Florida, and Alaska—only the Del Amo location is closed.

63.     To Plaintiffs' knowledge, *none* of the 50 States still prohibits indoor malls and shopping centers from operating, and Los Angeles is the *only* California county to prohibit indoor mall and shopping center operations while allowing exterior retail to remain open.  In fact, only *one* of the 35 commercial retail properties that Simon manages—which span 20 states and four California counties—is closed: Del Amo.  The County is an extreme outlier, to the detriment of Rivas Sports, Ms. Rivas, all of the County's other businesses and residents, and the community at large.

**Plaintiffs Have Been Afforded No Process To Challenge The Lack Of Any Rational Basis For The County Order Or The Distinctions It Draws**

64.     According to the County Order, Dr. Davis, as County Health Officer, may "issue Orders that are more restrictive than the guidance and orders issued by the State Public Health Officer" only "after consultation with the Board of Supervisors." County Order ¶ 25.  There is no evidence that Dr. Davis consulted with the Board before issuing the County Order, which is more restrictive than the Statewide Order.  The lack of consultation is apparent, as any consultation would have had to occur during a meeting open to the public under California's Ralph M. Brown Act, California Government Code § 54950 *et seq*.

65.     No other process was available to Plaintiffs or other interested members of the public to present data to the County Health Officer or Board or otherwise influence the County Order before it went into effect.

66.     Even though the County Order remains effective indefinitely, it does not allow for any process to challenge, before the County Health Officer or Board, its irrational classifications and determinations.

67.     If a process were available, Plaintiffs would present scientific evidence showing that indoor malls, shopping centers, and their interior retailers present no greater public health risk than outdoor malls, other retailers, big-box stores, barbershops, hair salons, and other businesses that have been allowed to remain open or reopen.  In fact, Plaintiffs would present evidence showing that indoor malls and shopping centers are *safer* and allow ample opportunities for social distancing, and that retailers like Rivas Sports, as well as managers like Simon, have made substantial investments and developed stringent protocols to protect employees and customers from the spread of COVID-19.

**<u>Defendants' Irrational Actions Have Harmed Plaintiffs,</u>**

**<u>And Residents Throughout the County</u>**

68.    The County's arbitrary closure of indoor malls and their interior retailers has caused, and will continue to cause, substantial harms to Plaintiffs, their employees, other Del Amo interior retailers and their employees, the community, and the retailers, operators, and employees of indoor malls and shopping centers throughout the County.   These harms include monetary losses due to reduced income, sales, and rent payments, and non-monetary and existential losses in the form of the loss of customer goodwill.   Rivas Sports and other Del Amo retailers also face the potential long-term loss of customer traffic, as consumers adjust their shopping habits, utilize more and more retailers outside Del Amo, and develop potentially long-term loyalty and brand affinity for the operating stores as a substitute for those in the mall's interior.

69.    Rivas Sports has been forced to close 75% of its Pro Image Sports locations due to the County's indefensible policy, as six of its eight locations are in the interior of County malls, including the Del Amo location.   Rivas Sports' business depends on foot traffic from the malls in which its stores operate; closing the stores has caused sales and profitability to collapse.   Ms. Rivas, the sole owner and an employee of Rivas Sports, has been devastated by this sudden upheaval of her entire business.   She began the business 24 years ago with her husband, starting with one franchise and expanding over time to eight.   When her husband passed away in 2015, she stepped up to run the family business, and has poured her heart and soul into keeping it running on her own while raising her three children.   Unfortunately, the closures have forced Rivas Sports to lay off employees, including dedicated managers that Ms. Rivas has worked with for 15 years.   Rivas Sports and Ms. Rivas are doing everything they can to protect these employees, including negotiating with vendors, the franchisor, lessors, and utilities.   The business cannot continue under these conditions, and Rivas Sports estimates that it will be forced to begin

permanently closing locations in the next month if the County does not immediately lift the closure order.

70. Due to the steep dropoff in sales and profitability, Rivas Sports is no longer able to pay Ms. Rivas a salary or shareholder dividends. Ms. Rivas is living off of savings and minimal unemployment insurance payments to support herself and her family.

71. Rivas Sports and likely over a hundred other Del Amo interior retailers would reopen at 25% capacity if permitted by the County. As permitted by the Statewide Order, Rivas Sports reopened its two locations in San Bernardino County on September 1 and 4, 2020, and would promptly open all six Pro Image Sports locations in the County if permitted. Simon opened Ontario Mills, an indoor mall located 60 miles from Del Amo in San Bernardino County, on August 31. Approximately 45% of the retailers opened on August 31 at 25% capacity, and, as of September 9, 67% of retailers were open, covering 76% of Ontario Mills' gross leasable area. In nearby Orange County, Simon Property opened indoor operations at Brea Mall with approximately 45% of retailers open on August 31, and 80% of retailers open by September 9, covering 93% of Brea Mall's gross leasable area. These numbers suggest that a substantial number of interior retailers at Del Amo would quickly reopen at 25% capacity, particularly given that Del Amo, Ontario Mills, and Brea Mall have a number of the same retailers. Interior retailers and their employees throughout the County, fully ready and able to reopen under the Statewide Order's restrictions, are suffering severe damages daily as their businesses remain closed and their employees remain out of work.

72. The County Order infringes on the property rights of Rivas Sports. Interior retailers, including Rivas Sports, lease space specifically for indoor shopping by the public, a safe and lawful purpose that would be possible virtually anywhere else in the country. Rivas Sports and other similarly situated interior retailers have property rights in those leases, have licenses allowing them to do

business, have property rights in the continued operation of their businesses, and have developed substantial goodwill among customers and the public.  Many interior retailers—like Rivas Sports—depend critically on foot traffic from the millions of mall patrons annually for sales.  The County Order prevents these businesses from operating, depriving them of these property rights.  Likewise, Del Amo is unable to operate for indoor public shopping—even though it is licensed for that purpose, it has developed substantial goodwill among its millions of visitors each year, and DAFC has invested hundreds of millions of dollars to make it a safe and attractive shopping destination.

73.     The County Order also infringes the right of Ms. Rivas and employees of other interior retailers to pursue their chosen occupations.  Ms. Rivas is an employee of, and the owner of, Rivas Sports.  All of Rivas Sports' locations are located in indoor malls and shopping centers, and 75% of those locations are currently closed due to the arbitrary and irrational County Order.  As a result of the store closures, Ms. Rivas is unable to receive a salary from Rivas Sports, and the company she owns and operates may soon go out of business if the County Order is not lifted immediately.

74.     Plaintiffs' damages attributable to Defendants' policies are severe, and continue to mount each day.

75.     Rivas Sports' Del Amo location remains closed, is unable to generate meaningful revenue, and incurs losses due largely to expenses that cannot be reduced.  During the month of June, the Del Amo location was able to generate over $40,000 in revenue—despite capacity limitations.  While that location is closed, however, it sells significantly less merchandise and causes substantial net losses for Rivas Sports.  Were the Del Amo location allowed to reopen, it would see far more foot traffic and sales—just like Rivas Sports' locations in San Bernardino County, which recently reopened subject to capacity limitations. While the Del Amo location normally employs approximately 10 people—and would employ approximately 7 if

allowed to reopen at 25% capacity—it has had to lay employees off.  In addition, Ms. Rivas, Rivas Sports' owner, has had to stop taking a salary.

76.     These injuries only begin to describe those that interior retailers have suffered and will continue to suffer.  Interior retailers face significant lost business opportunities and the possibility of inventory spoilage.  For example, Oil & Vinegar, a store selling specialty groceries, ordinarily holds a sale in August during the summer to clear its inventory—which has about a nine-month shelf life—before reordering ahead of the winter holiday season.  The Del Amo store was unable to hold that sale in August, and if the store does not reopen soon, it might not have the chance to sell its inventory before it expires.

77.     The sustained closure of Del Amo also affects the rent retailers pay. Interior retailers pay a minimum monthly rent, certain pass-through charges (such as for taxes), and a percentage of gross sales after sales exceed a certain threshold. Although retailers are obligated to pay minimum monthly rent during the term of their lease even if their stores are not open, many of Del Amo's interior retailers are unable to generate revenue to pay rent because the County Order prevents them from operating their stores in the mall.  The longer the interior of Del Amo stays closed, the more likely it becomes that retailers will be forced out of business, damaging the retailers, their employees, Plaintiffs, and the community.

78.     The County Order is enforceable through criminal sanctions.  State law authorizes law enforcement, including Defendant Alex Villanueva, in his official capacity as Sheriff of the County, to enforce orders of the County Health Officer. *See, e.g.*, Cal. Health & Safety Code § 101029; Cal. Gov't Code § 26602.  The County Order itself requests the assistance of law enforcement to "ensure compliance with and enforcement of this Order" and makes "[t]he violation of any provision of this Order . . . a public nuisance . . . punishable by fine, imprisonment, or both."  County Order ¶ 27.  Plaintiffs and their employees—along with the many

other interior retailers and their employees—would thus face criminal penalties if they violated the terms of the arbitrary and unsupported County Order.

## CLASS ACTION ALLEGATIONS

79.   Rivas Sports brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1)(A), (b)(2), and (b)(3) on behalf of itself and all others similarly situated.  The proposed class is defined as follows:

> All retailers at Del Amo Fashion Center that do not have an exterior entrance and are not "Essential Businesses" as defined in the County of Los Angeles Health Officer's Order, titled "Reopening Safer at Work and in the Community for Control of COVID-19," and last revised on September 4, 2020, and that thus must remain closed to the public for in-person shopping under the terms of that Order.

80.   The proposed class is so numerous that joinder of all members is impractical.  According to Simon's records, Del Amo has over 150 interior retailers that are not Essential Businesses.  Many of them are small businesses that have experienced severe financial hardship due to prolonged closures amid the COVID-19 pandemic, and are unable to institute suit on their own behalf.  In addition, the County Order was just issued, and immediate relief from it is necessary.  There is insufficient time to join all members of the proposed class.

81.   There are questions of law and fact that are common to the proposed class.  All members of the proposed class are interior retailers at Del Amo that are not Essential Businesses and are thus closed to public, in-person shopping due to the County Order.  Members of the proposed class have suffered common federal and state constitutional injuries from the County Order, which arbitrarily and irrationally treats proposed class members differently based solely on their location in the interior of a mall—a distinction that has no scientific or other rational basis. Members of the proposed class have suffered, and will continue to suffer, injury to their property rights, financial harms, and loss of goodwill due to the County Order. Their shared common facts and harms will ensure that judicial findings regarding

the legality of the County Order will be the same for all members of the proposed class.  Should Rivas Sports prevail, *all* proposed class members will benefit, as the interior of Del Amo—and proposed class members' businesses—will be permitted to reopen.

82.     Rivas Sports' claims are typical of the claims of the proposed class. Rivas Sports and proposed class members raise common legal claims and are united in their interest and injury.  Rivas Sports, like all proposed class members, is an interior retailer at Del Amo that is not an Essential Business, and has thus been forced to close to in-person public shopping by the County Order.  Rivas Sports and the members of the proposed class are thus victims of the same, unlawful order, for which Defendants are responsible.

83.     Rivas Sports is an adequate representative of the proposed class.  Rivas Sports seeks relief on behalf of the proposed class as a whole and has no interest antagonistic to other members of the proposed class.  To the contrary, Rivas Sports' interests are *aligned* with those of other proposed class members:  Rivas Sports' business depends on foot traffic from the mall; when more stores are open, more shoppers come to the mall, increasing Rivas Sports' potential customer base.  Rivas Sports' goal is to declare the unlawful County Order invalid, to prevent enforcement of the County Order against Rivas Sports and other Del Amo retailers, and to obtain compensation for the property, financial, and other harms the County Order has inflicted on them.  Rivas Sports seeks the same remedies for all class members.  It is represented by attorneys from Latham & Watkins LLP, who are experienced in class actions and complex constitutional litigation against government actors, and have the resources to successfully obtain class relief.  Rivas Sports and its counsel intends to prosecute this action vigorously.

84.     Members of the proposed class may be ascertained from Del Amo's business records and can be personally notified of the pendency of this action by

first-class mail, e-mail, personal service, and/or published notice calculated to reach all such members.

85.     As this action involves the validity of the County Order, inconsistent or varying adjudications with respect to individual members of the proposed class could establish incompatible standards of conduct for Defendants. *See* Fed. R. Civ. P. 23(b)(1)(A).

86.     Defendants have acted or refused to act on grounds that apply generally to the proposed class, and final declaratory and injunctive relief is appropriate respecting the proposed class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

87.     The questions of fact and law common to Rivas Sports and members of the proposed class predominate over any questions affecting individual members. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things:  (a) the County Order applies to all proposed class members, Rivas Sports and proposed class members are entitled to uniform relief, and individualized actions could result in incompatible standards of conduct for Defendants; (b) members of the proposed class could not reasonably be expected to seek legal redress individually, as they are suffering severe financial hardship from the continued forced closure of their businesses; (c) time is of the essence to keep Rivas Sports and other proposed class members from going out of business; (d) to Rivas Sports' knowledge, there is no other litigation concerning this controversy; (e) it is desirable to concentrate this litigation in this District since Rivas Sports, other proposed class members, Del Amo, and Defendants are all located in the District; (f) the class action procedure provides the benefits of adjudicating the issues raised in a single proceeding, economies of scale, and comprehensive supervision by a single court; and (g) this action presents no unusual management difficulties. *See* Fed. R. Civ. P. 23(b)(3).

88.     For these reasons, this case should be certified as a class action.

# FIRST CAUSE OF ACTION

## (42 U.S.C. § 1983 and *Ex Parte Young*—Equal Protection)

89.     All of the foregoing paragraphs are incorporated as though fully set forth herein.

90.     The Fourteenth Amendment to the United States Constitution forbids Defendants from "deny[ing] any person . . . the equal protection of the laws."  The basic principle animating this command is that the government must treat similarly situated persons similarly; "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference."  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008).

91.     Under the County Order, many businesses—including big-box retailers like Walmart and Target, large department stores located in malls that have exterior entrances, and small businesses like barbershops with exterior entrances—are allowed to open to the public.  Yet similarly situated non-essential businesses located in indoor malls and shopping centers cannot open to the public for in-store shopping at all—just because of their interior locations.  And even the operations of essential businesses located in indoor malls and shopping centers are restricted by comparison with like businesses not located in indoor malls or shopping centers.  County Order ¶ 9(d); *see* Appendix E.

92.     There is no rational reason for this difference in treatment.   The Statewide Order allows indoor malls and shopping centers to reopen, and the County Order classifies indoor malls and shopping centers as Lower-Risk Businesses, the same classification given to many other businesses that are allowed to open.  County Order ¶ 9. The County Order cites no evidence supporting the determination to force indoor malls and shopping centers to remain closed while allowing other, similar businesses to open.  And there is none.  According to the scientific evidence, indoor

malls and shopping centers, and the stores connected to them, pose no greater public health risk than other, similar businesses that are allowed to open.

93.     The only distinguishing feature of the interior stores that must stay closed is the need to pass through the vast common areas of indoor malls for access. But retail shopping—including at stores that are allowed to remain open—almost always involves being indoors.  There is nothing about the indoor common areas of indoor malls and shopping centers that makes transmission of COVID-19 there more likely than in other retail properties.  To the contrary, the common areas of indoor malls and shopping centers generally are wider and higher ceilinged than the narrower aisles of big-box stores and department stores, much less the far more cramped spaces inside smaller stores and barbershops, and thus offer better air circulation and more room for social distancing—factors key to inhibiting the spread of COVID-19.

94.     Moreover, interior retailers like Rivas Sports, and indoor mall and shopping center managers like Simon, stand ready to abide by capacity limitations, social distancing measures, and other guidelines meant to inhibit the spread of COVID-19.  Indeed, Rivas Sports and Simon Property have invested significant resources and developed stringent protocols meant to protect employees and customers that go beyond what many jurisdictions require.

95.     The disparate treatment visited on indoor malls and shopping centers is wholly irrational and violates equal protection.  Plaintiffs and the proposed class have suffered harm to their property rights, financial harm, and harm to their goodwill on account of the County Order, and will continue to suffer such harms unless Defendants are enjoined from enforcing the County Order against them.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 and *Ex Parte Young*—Due Process)

96.     All of the foregoing paragraphs are incorporated as though fully set forth herein.

97.     The Fourteenth Amendment to the United States Constitution forbids Defendants from "depriv[ing] any person of life, liberty, or property, without due process of law." This prohibition includes a substantive component—protection from arbitrary government action—and a procedural component—a guarantee of appropriate process before a governmental deprivation of a protected interest. *See, e.g.*, *Daschke v. Hartenstein*, 420 F. Supp. 3d 919, 937 (D. Ariz. 2019) (citing cases).

98.     By forcing interior retailers to remain closed to the public, the County Order deprives Plaintiffs and proposed class members of several interests protected by due process, including, among other things, the right to use Del Amo and premises leased to interior retailers for their intended, longstanding, and otherwise lawful purpose of providing indoor shopping to the public; the right to allow public access to the Del Amo interior and the premises leased to interior retailers, including Rivas Sports and proposed class members; the right to pursue one's chosen occupation; the right to continued business operations; rights under business licenses; and business goodwill. *See, e.g.*, *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316-17 (9th Cir. 1989).

99.     These deprivations are wholly arbitrary. The Statewide Order allows indoor malls and shopping centers to reopen, and the County Order classifies indoor malls and shopping centers as Lower-Risk Businesses, a category that is generally allowed to reopen. There is no scientific evidence showing that indoor malls and shopping centers pose any greater public health risk than businesses that the County Order allows to open, nor any rational basis for inferring such a distinction. And the County Order does not even attempt to provide any valid public health-related reason for treating indoor malls and shopping centers differently.

100.    The County Order also fails to afford those whose rights it compromises any process whatsoever. Before the County Order went into effect, Plaintiffs, proposed class members, and other interested members of the public had no opportunity to present data showing that indoor malls and shopping centers are safe,

and that the distinctions the County Order draws are irrational.  Nor does the County Order provide any post-deprivation process.  Even though the County Order has no fixed end date, and could remain effective for the foreseeable future, it provides no process for challenging the arbitrary distinction it draws between businesses allowed to open and those forced to stay closed.  *See* County Order ¶ 28.

101.   There is no justification for this total lack of process.  The COVID-19 pandemic has persisted for months, and absent some process for challenging the County Health Officer's decision indoor malls and shopping centers could remain closed indefinitely, for no valid reason.  "[E]ven the war power does not remove constitutional limitations safeguarding essential liberties."  *Bowles v. Willingham*, 321 U.S. 503, 521 (1944) (citation omitted).

102.   If due process were available, Plaintiffs would present scientific evidence showing that indoor malls and shopping centers present no greater public health risk than outdoor malls, other retailers, big-box stores, barbershops, hair salons, and other businesses that have been allowed to remain open or reopen.

103.   The continued forced closure of indoor malls and shopping centers, as well as their interior retailers, violates due process.  Plaintiffs and the proposed class have suffered harm to their property rights, financial harm, and harm to their goodwill on account of the County Order, and will continue to suffer such harms unless Defendants are enjoined from enforcing the County Order against them.

### THIRD CAUSE OF ACTION

### (42 U.S.C. § 1983—*Monell*)

104.   All of the foregoing paragraphs are incorporated as though fully set forth herein.

105.   Pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the County and the Board are liable for damages when a County policy, custom, or practice is the moving force behind a constitutional

violation.  *See, e.g.*, *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc).

106.   Dr. Davis, the County Health Officer, is a county officer and policymaker authorized to issue orders on behalf of the County, to enforce those orders, and to request the assistance of law enforcement in enforcing those orders. *See, e.g.*, Cal. Health & Safety Code §§ 101000, 101029, 101030, 101040.   The County Order represents an official policy, custom, or practice of the County.

107.   The County Order directly causes the constitutional violations described above.   Under state law and the Statewide Order, indoor malls and shopping centers are allowed to open.   The County Order—and only the County Order—requires the arbitrary, irrational, and discriminatory closure of indoor malls and shopping centers.

108.   The County and the Board have exhibited deliberate indifference to constitutional rights by, for example, allowing the County Health Officer to issue the County Order without the consultation directed under the terms of the County Order.

109.   Under *Monell*, the County and the Board are liable for damages resulting from the constitutional violations described above.

## **FOURTH CAUSE OF ACTION**
### **(California Constitution—Article I, § 7)**

110.   All of the foregoing paragraphs are incorporated as though fully set forth herein.

111.   Under article I, § 7 of the Constitution of the State of California, "[a] person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws."   This provision is "self-executing." *Katzberg v. Regents of the Univ. of Cal.*, 58 P.3d 339, 342 (Cal. 2002); *see* Cal. Const. art. I, § 26 ("The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.").   And it is

"not dependent on [the rights] guaranteed by the United States Constitution."  Cal. Const. art. I, § 24.

112.  "California's state equal protection guarantee . . . is broader than its federal counterpart."  *People v. Cowan*, 260 Cal. Rptr. 3d 505, 536 (Ct. App. 2020) (Streeter, J., concurring); *see id.* (collecting cases).  The irrational closure of indoor malls and shopping centers while other Lower-Risk Businesses are allowed to open, which violates federal equal protection principles, necessarily also violates California equal protection principles.

113.  California's due process guarantee is also broader than its federal counterpart, focusing on the "due process liberty interest to be free from arbitrary adjudicative procedures" and "protect[ing] a broader range of interests" than the United States Constitution.  *Ryan v. Cal. Interscholastic Fed'n—San Diego Section*, 114 Cal. Rptr. 2d 798, 814 (Ct. App. 2001).  As discussed above, the County Order arbitrarily forces the closure of indoor malls and shopping centers and deprives Plaintiffs and the proposed class of, among other things, the right to use Del Amo and premises leased to interior retailers for their intended, longstanding, and otherwise lawful purpose of providing indoor shopping to the public; the right to allow public access to the Del Amo interior and the premises leased to interior retailers, including Rivas Sports and proposed class members; the right to pursue one's chosen occupation; the right to continued business operations; rights under business licenses; and business goodwill—all without any pre- or post-deprivation process whatsoever.  The County Order therefore offends California due process principles.

114.  The County Order violates article I, § 7 of the California Constitution.  Plaintiffs and the proposed class have suffered harm to their property rights, financial harm, and harm to their goodwill on account of the County Order, and will continue to suffer such harms unless Defendants are enjoined from enforcing the County Order against them.

**FIFTH CAUSE OF ACTION**

**(California Constitution—Improper Delegation Of Legislative Power)**

115.   All of the foregoing paragraphs are incorporated as though fully set forth herein.

116.   The California Constitution prohibits State and local governmental entities from delegating legislative power. *See Kugler v. Yocum*, 445 P.2d 303, 304-05 (Cal. 1968); *see id.* at 305 ("[T]he doctrine prohibiting delegation of legislative power . . . is well established in California."). To prevent an unlawful delegation of legislative power, a legislative body must, at a minimum, "declare a policy, fix a primary standard, and authorize executive or administrative officers to prescribe subsidiary rules and regulations that implement the policy and standard and to determine the application of the policy or standard to the facts of particular cases." *Birkenfeld v. City of Berkeley*, 550 P.2d 1001, 1028 (Cal. 1976). In addition, a legislative body must "establish an effective mechanism to assure the proper implementation of its policy decisions." *Id.* at 1029; *see Gerawan Farming, Inc. v. Agric. Lab. Rels. Bd.*, 405 P.3d 1087, 1103 (Cal. 2017) ("[A] statute delegating legislative power must be accompanied by 'safeguards adequate to prevent its abuse.'" (quoting *Kugler*, 445 P.2d at 306)).

117.   If the County Order was not an executive action subject to due process and other limitations, then it was a legislative act. But if the County Order was a legislative act, it would plainly transgress California principles regarding the delegation of legislative power.

118.   Dr. Davis's authority to issue the County Order is based on California Health & Safety Code §§ 101040, 101085, and 120175. *See* County Order at 2. Section 101040(a) allows a health officer to "take any preventive measure that may be necessary to protect and preserve the public health from any public health hazard during any 'state of war emergency,' 'state of emergency,' or 'local emergency,' as defined by Section 8558 of the Government Code, within his or her jurisdiction."

Section 101040(b) defines "preventive measure" broadly, meaning "abatement, correction, removal or any other protective step that may be taken against any public health hazard that is caused by a disaster and affects the public health."  Section 101085(a)(1) allows a health officer, during a health emergency, to require information needed "to take any action necessary to abate the health emergency . . . or protect the health of persons in the jurisdiction, or any area thereof, who are, or may be affected."  Section 120175 requires a health officer who knows that a reportable infectious disease exists within his or her jurisdiction to "take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases."

119.   These statutes do not provide any articulable standard to guide a health officer's actions.  These statutes do not require a health officer to make any findings based on evidence, and they provide no standards to judge what measures are "necessary to protect and preserve the public health" and when those measures are no longer "necessary."  The statutes give health officers virtually limitless authority to take any "protective step" they deem necessary in their sole discretion.

120.   Moreover, the statutes provide absolutely no safeguards to prevent abuse.  There is no requirement that the health officer periodically review his or her orders, and there is no statutory process to challenge a health officer's order.  Even if the lack of safeguards were defensible during short-term health emergencies, it is completely indefensible during a global pandemic that has already lasted months and may persist for many more.  The authority of the unelected health officer to regulate conduct for an indefinite period of time cannot go unchecked.  *Cf. Birkenfeld*, 550 P.2d at 1029-30 (charter amendment invalid because it effectively prevented rent control board from adjusting rents, "making inevitable the arbitrary imposition of unreasonably low rent ceilings" for an "indefinite period").

121.   The concerns underlying the nondelegation principle are on full display here.  The County Order provides no reason why it is "necessary to protect and

preserve the public health" to force indoor malls and shopping centers to stay closed when other retail businesses may open.  Nor is there in fact any valid public health reason to force indoor malls and shopping centers to remain closed.  Yet Dr. Davis's decision to force them to stay closed is effective indefinitely, County Order ¶ 28, and is not subject to administrative review.

122.  The statutory delegation of legislative power to health officers is invalid, on its face and as applied to the County Order.  As a result, the County Order, issued pursuant to California Health & Safety Code §§ 101040, 101085, and 120175, is ultra vires and cannot be enforced.  Plaintiffs and the proposed class have suffered harm to their property rights, financial harm, and harm to their goodwill on account of the County Order, and will continue to suffer such harms unless Defendants are enjoined from enforcing the County Order against them.

## **PRAYER FOR RELIEF**

WHEREFORE, Rivas Sports, on behalf of itself and the proposed class, and the other Plaintiffs pray for the following relief:

1.  Certification of this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1)(A), (b)(2), and (b)(3), appointment of Rivas Sports as class representative, and appointment of Latham & Watkins LLP as class counsel;

2.  Judgment in favor of Plaintiffs and the proposed class and against Defendants on all causes of action alleged herein;

3.  General, special, compensatory, and incidental damages according to proof;

4.  A declaration that the County Order is invalid for one or more of the reasons alleged herein;

5.  Injunctive relief preventing the County Order from being enforced against Plaintiffs and the proposed class;

6.  Any and all other equitable relief, including preliminary and permanent injunctive relief, that the Court deems appropriate;

7.     An award to Plaintiffs for costs, expenses, and reasonable attorneys' fees as permitted by law; and

8.     An award of such other and further relief as the Court deems just and proper.

Dated:  September 10, 2020          LATHAM & WATKINS LLP
                                    Michael G. Romey
                                    Richard P. Bress
                                    Andrew D. Prins
                                    Sarah F. Mitchell
                                    Eric J. Konopka


                                    By  /s/ Michael G. Romey
                                        Michael G. Romey
                                        *Attorneys for Plaintiffs and the Proposed Class*

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury on all issues so triable.

3

Dated:  September 10, 2020          LATHAM & WATKINS LLP

4                                                           Michael G. Romey
                                                            Richard P. Bress
5                                                           Andrew D. Prins
                                                            Sarah F. Mitchell
6                                                           Eric J. Konopka

7

8                                                By  */s/ Michael G. Romey*
                                                           Michael G. Romey
9                                                          *Attorneys for Plaintiffs and the Proposed*
                                                           *Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28